## THE STATE *v.* MORSE.

An indictment for perjury under the statute is bad, which does not charge in the language of the act that the defendant "wilfully and corruptly deposed, affirmed, or declared, matter to be fact, knowing the same to be false, or denied matter to be fact, knowing the same to be true."

If an indictment does not substantially follow the language of the statute, it does not clearly charge an indictable offence, and is consequently not cured by that section of the statute which provides that "no indictment shall be quashed if an indictable offence is clearly charged therein."

ERROR, *to Johnson District Court.*

Indictment for perjury, framed in the usual form, but

omitting to charge the perjury in the language of the statute. It alleges that Morse "falsely, maliciously, wilfully, wickedly, and corruptly, and by his own proper act and consent upon his said oath, did depose and swear in writing," &c. The indictment then sets forth the defendant's plea, in an action of assumpsit against him on a promissory note, and in which plea, verified by his oath, he denies his signature to the note. After setting forth the plea and affidavit, the indictment charges "that in truth and in fact the said *Edwin R. Morse* did execute the said due-bill mentioned in the said affidavit, attached and appended to the said plea as aforesaid," &c.; but the scienter is not given in the language of the statute, that he "wilfully and corruptly deposed, affirmed, or declared any matter to be fact, knowing the same to be false, or denied any matter to be fact, knowing the same to be true." On demurrer the indictment was adjudged insufficient.

*H. D. Downey,* prosecuting attorney, for the state. For the plaintiff in error it is contended that the court below erred in rendering judgment for the defendant. The allegation that the defendant knew that to be true which he denied to be fact, does substantially appear in the indictment. The court will, on examination of the indictment, find the allegation of knowledge on the part of defendant that he did execute the due-bill—the denial under oath of the execution of which bill caused him to be indicted—contained in the words following: "And then and there the said Morse *devising* and wickedly intending to cause and produce a judgment to pass against Webster, and in favor of himself upon the trial of said action of assumpsit, did on that behalf falsely, maliciously, wilfully, wickedly, and corruptly, and by his own proper act and consent upon his said oath, depose as follows," &c., (denying absolutely the execution of the due-bill.) This language amounts in *substance* to a positive assertion that the defendant knew the fact that he had executed the due-bill to be true, and,

knowing that fact, denied it. It negatives, in as strong terms as it is possible to employ, the fact that he made the denial under oath, ignorantly, innocently, or recklessly. It attributes to the defendant a strong and corrupt motive, to wit : " devising and wickedly intending to cause a judgment to pass in his favor." Did he make the oath ignorantly or recklessly? Why, then, charge him with a corrupt motive? He could not, unless he knew that to be a fact which he swore was not a fact, have been influenced in the slightest degree by the motive charged upon him in the language just quoted. The defendant either knew or did not know that he had executed the due-bill. If he knew it, then how express that fact in language more potent than that he, when sued on the due-bill, wickedly intending to cause a judgment to pass against the payee thereof, and in favor of himself, the maker, upon the trial, did in that behalf falsely, wilfully, and corruptly, and by his own proper act and consent, deny the fact under oath. If he did not know that he had executed the bill, why charge him with such a motive for denying a fact of which he was ignorant? Ignorance of the fact confesses the entire absence of a motive. Recklessness would import anything but a supremely selfish motive, such as the above language attributes to the defendant. The whole clause quoted is absurd, if it conveys any other idea than that the defendant knowingly took a false oath. No language could more strongly negative the idea of innocence, ignorance, or carelessness than that employed in the indictment. Doubtless there are cases where a man may ignorantly swear to a certain state of facts with a corrupt intention. But is this such a case? To say that the defendant could deny his own signature to a bill upon which suit was brought against him, through pure ignorance or carelessness, and at the same time be impelled by such a motive as the one attributed to him, is such a contradiction as amounts to an absurdity.

For the plaintiff, therefore, it is contended that the guilty knowledge by the defendant is substantially alleged, and

that the language used in the indictment for that purpose is as plain, strong, and distinct, as if the very words of the statute had been employed.

Again: it is contended for the plaintiff that the court erred in not sustaining the indictment, because the laws of Iowa do not require more than the substance of the crime of perjury to be stated in an indictment. If this court is satisfied that the crime has been substantially alleged, then the decision of the case presents no difficulties. In the *Rev. Stat.* p. 171, § 32, the following enactment occurs : " In every indictment for perjury, it shall be sufficient to set forth the substance of the offence charged upon the defendant, &c." Here the court will perceive that indictments for perjury need only allege the substance of the offence, without the usual formalities required in relation to other offences. A full review of the indictment, we think, cannot fail to satisfy the court that everything necessary to constitute the crime of perjury has been amply and substantially alleged in this case.

It is further contended for the plaintiff, that the decision of the court below violated the spirit and intention of the following enactment, *Rev. Stat.* p. 153, § 46 : " No indictment shall be quashed if an indictable offence is clearly charged therein, or if the charge be so explicitly set forth that judgment can be rendered thereon."

*Gilman Folsom* and *C. Bates*, for the defendant. What is perjury under the statute of Iowa ? The 30th section of an act defining crimes and punishments, answers this question. That section provides, " that if any person, on his or her oath or affirmation, in any action, plea," &c., " shall wilfully and corruptly depose, affirm, or declare any matter to be fact, knowing the same to be false, or shall in like manner deny any matter to be fact, knowing the same to be true ; every person so offending shall be deemed guilty of perjury," &c. *Rev. Stat.* p. 171.

Under this statute, the *scienter* constitutes the very gist

of the offence. Without this knowledge of the falsity of that
to which he swore, though every word of his evidence were
false in fact, he is not guilty of perjury under the above law
defining what is perjury. Many authorities can be cited
showing that indictments must exactly pursue the language
of the law creating the offence. 2 Chit. C. L. 315–316;
Arch. C. Pl. and Ev. 541; 1 Chit. C. L. 241, and note (B.)
But we need not cite authorities to show, that the exact
words of the statute creating the crime should be used; it is
sufficient for our present purpose, if we can show that the
statute creating the crime must be substantially followed.
Reason, in the absence of all authority, it would seem, ought
to be sufficient to establish this point. But it is believed,
that all of the authorities on this point are in favor of the po-
sition we assume. 6 American C. L. 35, (5); Ohio Cond.
R. 838; 4 Bacon's Ab. 328; 8 Ohio R. 111, and the authori-
ties cited on the other point, which also are good authority
on this. In the case of *Rex* v. *Young*, 1 Russel, 391, and
in *U. S.* v. *Keen*, 5 Mason, 453, it was held, that an indict-
ment at common law, for aiding a prisoner's escape, should
state, that the party knew of his offence.

In *Gatewood* v. *The State*, 4 Ham. 386, it was held, that
an indictment for stealing bank bills, must aver that the de-
fendant knew the bills to be bank bills, or the indictment
would be bad. These authorities show, that where the
scienter is a material ingredient in the crime, it must either
at common law or under the statute, be expressly averred, or
the indictment is bad. The statute of Ohio, under which
the above decision was had, makes the scienter a part of the
description of the offence, and therefore it must be averred in
the indictment. In order to make the stealing of bank bills,
stealing within the meaning of the statute of Ohio, the de-
fendant must have known that they were bank bills. So in
Iowa, as to perjury, the defendant must have known that
what he swore to was false, or else it is not perjury, though
he swore falsely.

Our statute, in defining perjury, has changed the common

law, and therefore an indictment after the forms under the common law, would not be good.

Our statute very wisely and humanely protects a man who may swear falsely through surprise, inadvertency, or by mistake, from being guilty of the crime of perjury.

The reason given in the books, why no other words should be substituted for those employed in constituting the specific offence, is, " because no other words are exactly descriptive of the offence." In addition to the authorities above, see to the same points, 1 Chit. C. L. 282, and notes (B) and (X); 6 Mis. 263; 8 Mass. 65; 2 Pick. 141; 2 Mass. 130; 1 Bailey, 144; 6 Serg. and Rawle, 5; 1 Gall. C. C. R. 437; 2 Marsh. 364.

" Perjury, at common law, is defined to be a wilful false oath, by one who, being lawfully required to depose the truth in a judicial proceeding, swears absolutely, in a matter material to the point in question, whether he be believed or not." The scienter is not embraced within this definition, though most of the forms, if not all, in Archbold and Chitty, aver that defendant " well knew " the contrary of what he swore. 2 Chit. C. L. 319. Under this definition, " the oath must be false,"—not in fact, as it would seem, but in intention; for if the defendant, intending to deceive, assert of his own knowledge that which may be true, without any knowledge of the fact, he is equally criminal, and the accidental truth of his evidence will not excuse him. But under our law it would be otherwise. He must know that what he swears is false. Our law does not punish a man for maliciously, wilfully, and corruptly telling the truth, though it be with the intent to deceive. He must know that what he states as true, is in fact false, or it is not perjury.

But it is contended by the plaintiff, that the words in the indictment are in substance the same as the words used in the law describing the crime. Is this position tenable? Defendant contends that it is not. Because, first, there is no word singly, nor words collectively, in the whole indictment, whose technical, or common meaning, is synonymous with

The State *v.* Morse.

these words in the law, "knowing the same to be false." The least difference between the meaning of the words of the indictment, and those in the law describing—creating the crime, would make the charge in the indictment different from the crime as known to the law, and would therefore be matter of substance, and vitiate the indictment. Defendant could have made the affidavit, "devising and wickedly intending to cause and procure a judgment to pass against Webster," and still not have known that what he swore was false. He may have believed that what he swore was true, but in this he might have been mistaken. A man, after. a lapse of years, may have really forgotten a small transaction of this kind. Again, a man might, with all the motives and intentions alleged against this defendant, seek to accomplish a particular result by testifying to the truth. A person knowing a particular fact, may have a deadly hatred against a party to a suit, and may, with all the motives, intentions, and feelings stated in the indictment, volunteer as a witness for the express purpose of gratifying his malice, and testify to such fact, and thereby procure a judgment to pass against his enemy. It is unnecessary to take up each word separately which is relied upon by plaintiff, as making up an averment of knowledge, as every word, except one, "falsely," has no other legitimate meaning than to express the feelings, motives, and intentions of the defendant, all of which may have existed consistently with the hypothesis of the defendant's want of knowledge—in fact, they express no such idea or meaning as knowledge. The word "falsely," certainly does not show that the defendant denied a fact, knowing it to be true.

But, secondly, all of these words precede the allegation of perjury, and seem to have been introduced rather as inducement, than as part of the charge of perjury ; but if they properly constitute a part of the charge of perjury, still it is believed that they are perfectly harmless, without some other words importing knowledge of the defendant, as to the falsity of what he swore. It is not claimed by the plaintiff that

there are any words, after the copy of the plea and affidavit, that amount to an averment of knowledge ; so it is unnecessary to say anything further as to them.

What would be alleging in the indictment the substance of the statutory offence ? It would be employing words whose appropriate meaning is substantially the same. But the words here used have no similarity in meaning with those of the statute, and therefore the plaintiff's pretended averment of knowledge is entirely inferential, if at all. It is confidently asserted, that no rule of law or authority can be found, sanctioning inferential averments, and much less will they authorize a crime, particularly defined by statute, to be changed, or in part substituted, in indictments, by inference.

*Opinion by* Hastings, C. J. The omission in the indictment to charge, in the language of the statute, that the defendant deposed, affirmed, or declared some matter to be fact, knowing the same to be false, or denied some matter to be fact, knowing the same to be true, is a substantial defect, and is not cured by any statute. The statute referred to by the prosecuting attorney, providing that "no indictment shall be quashed if an indictable offence is clearly charged therein, or if the charge be so explicitly set forth that judgment can be rendered thereon," does not cure the defect, for the reason that no indictable offence is set forth in the indictment according to statute.

Judgment affirmed.